# United States Court of Appeals
# for the Federal Circuit

---

**CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (CHANGSHU), INC., CANADIAN SOLAR MANUFACTURING (LUOYANG), INC., CSI SOLAR POWER (CHINA) INC., CSI-GCL SOLAR MANUFACTURING (YANCHENG) CO., LTD., CSI CELLS CO., LTD., CANADIAN SOLAR (USA), INC., SHANGHAI BYD CO., LTD., YINGLI GREEN ENERGY HOLDING CO., LTD., BAODING TIANWEI YINGLI NEW ENERGY RESOURCES CO., LTD., TIANJIN YINGLI NEW ENERGY RESOURCES CO., LTD., HENGSHUI YINGLI NEW ENERGY RESOURCES CO., LTD., LIXIAN YINGLI NEW ENERGY RESOURCES CO., LTD., BAODING JIASHENG PHOTOVOLTAIC TECHNOLOGY CO., LTD., BEIJING TIANNENG YINGLI NEW ENERGY RESOURCES CO., LTD., HAINAN YINGLI NEW ENERGY RESOURCES CO., LTD., SHENZHEN YINGLI NEW ENERGY RESOURCES CO., LTD., YINGLI GREEN ENERGY INTERNATIONAL TRADING CO., LTD., YINGLI GREEN ENERGY AMERICAS, INC., YINGLI ENERGY (CHINA) CO., LTD., CHANGZHOU TRINA SOLAR ENERGY CO., LTD., TRINA SOLAR (CHANGZHOU) SCIENCE & TECHNOLOGY CO., LTD., YANCHENG TRINA SOLAR ENERGY TECHNOLOGY CO., LTD., CHANGZHOU TRINA SOLAR YABANG ENERGY CO., LTD., TURPAN TRINA SOLAR ENERGY CO., LTD., HUBEI TRINA SOLAR ENERGY CO., LTD., TRINA SOLAR (U.S.) INC., SOLARWORLD AMERICAS, INC.,**
*Plaintiffs*

**NINGBO QIXIN SOLAR ELECTRICAL APPLIANCE CO., LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

————————————

2020-2162

————————————

Appeal from the United States Court of International Trade in Nos. 1:17-cv-00173-CRK, 1:17-cv-00187-CRK, 1:17-cv-00193-CRK, 1:17-cv-00197-CRK, 1:17-cv-00200-CRK, Judge Claire R. Kelly.

————————————

Decided: May 19, 2023

————————————

ADAMS LEE, Harris Bricken McVay Sliwoski, LLP, Seattle, WA, argued for plaintiff-appellant.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; LESLIE MAE LEWIS, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

————————————

Before DYK, LINN, and CHEN, *Circuit Judges*.

DYK, *Circuit Judge.*

Ningbo Qixin Solar Electrical Appliance Co. Ltd. ("Qixin") appeals a final judgment of the United States Court of International Trade ("CIT"). The CIT sustained a remand determination by the Department of Commerce ("Commerce") that Qixin was not eligible for a separate rate in an antidumping administrative review and held that Commerce did not err in declining to rescind the review.[1]

On appeal, Qixin contends that (1) the CIT should have granted Qixin's motion for leave to file new factual material and (2) Commerce should have rescinded the administrative review because Commerce had determined that Qixin had made no entries during the period of review. Because (1) the CIT did not abuse its discretion in denying Qixin's motion to file new material out of time and (2) Commerce did not make a conclusive finding that Qixin had no entries in the period of review as required to rescind a review under the applicable regulation, we affirm.

BACKGROUND

I

Commerce imposes antidumping duties when it "determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value," resulting in actual or threatened harm to a domestic industry. 19 U.S.C. § 1673. Foreign exporters of merchandise that is subject to an antidumping duty order must deposit preliminary estimated antidumping duties when the merchandise enters the United States, but the final antidumping duty rate is determined later, during

---

[1]    *Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326 (Ct. Int'l Trade 2019).

annual retrospective administrative reviews. *See* 19 C.F.R. § 351.212(a).

An administrative review requires Commerce to review the antidumping duty rate applicable to specific entries in the period of review. As the government agrees, where it is established that there are no entries of subject merchandise in the period, Commerce "cannot" initiate an administrative review. *Allegheny Ludlum Corp. v. United States*, 346 F.3d 1368, 1372 (Fed. Cir. 2003).

In the case of nonmarket economy ("NME") countries, such as the People's Republic of China ("PRC"), all exporters are presumed to be controlled by the state and, accordingly, are subject to a single country-wide duty rate, unless an exporter is able to affirmatively demonstrate the absence of state control, in which event the exporter is entitled to a separate rate. *See Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1349–50 (Fed. Cir. 2015); *see also* 19 C.F.R. § 351.107(d). An exporter seeking a separate rate from an NME country-wide rate has the burden of demonstrating that it was free of state control and that it had entries of subject merchandise that entitled it to a separate rate for the period of review. *See Diamond Sawblades Mfrs. Coal. v. United States*, 866 F.3d 1304, 1311 (Fed. Cir. 2017).

## II

This appeal relates to the third administrative review of a 2012 antidumping duty order for solar cells from the PRC.[2] The 2012 antidumping duty order had assigned

---

[2] Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order, 77 Fed. Reg. 73,018 (Dec. 7, 2012).

Qixin a separate rate lower than the PRC-wide rate, as did the first two administrative reviews for the periods from May 25, 2012, through November 30, 2013, and from December 1, 2013, through November 30, 2014,[3] evidently finding that Qixin had entries during these review periods and was not government controlled.

For the third administrative review, for the review period from December 1, 2014, through November 30, 2015, Qixin filed a request for administrative review and was included as a party in Commerce's initiation notice.[4] That initiation notice explained that a party seeking a separate rate would have to submit a separate rate application or certification.[5] The separate rate application explained that "an exporter cannot obtain a separate rate without providing [Commerce] the relevant U.S. Customs 7501 Entry

---

[3]    *See* Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2012–2013, 80 Fed. Reg. 40,998, 41,002 (July 14, 2015); Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2013–2014, 81 Fed. Reg. 39,905, 39,907, 39,908 (June 20, 2016).

[4]    Initiation of Antidumping and Countervailing Duty Administrative Reviews, 81 Fed. Reg. 6,832, 6,835 (Feb. 9, 2016).

[5]    *Id.* at 6,834.  The notice also explained that "[i]f a producer or exporter named in this notice of initiation had no exports, sales, or entries during the period of review . . . , it must notify [Commerce] within 30 days of publication of this notice." *Id.* at 6,832.

Summary." J.A. 118. Qixin filed a separate rate application in March 2016 with a U.S. Customs 7501 Entry Summary for a single sale Qixin claimed was a sale of merchandise during the 2014 to 2015 period of review. In response to two supplemental questionnaires from Commerce, Qixin maintained that the sale was of subject merchandise. Commerce continued to assert that Qixin had not provided an entry number that corresponded to subject merchandise.

In December 2016, Commerce issued the preliminary results of the administrative review.[6] The preliminary results did not mention Qixin's eligibility for a separate rate. Qixin submitted a case brief commenting on the preliminary results, arguing that Commerce had erroneously omitted Qixin from the preliminary results of the administrative review and should correct the error and calculate a separate rate for Qixin. Qixin argued, in the alternative, that if Commerce concluded that there had been no entries during the period of review, it should have rescinded the review with respect to Qixin. The effect of rescinding the administrative review with respect to Qixin would have been that the separate rate established in the previous administrative review would continue going forward as the cash deposit for any new Qixin entries.

---

[6]    Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2014–2015, 81 Fed. Reg. 93,888 (Dec. 22, 2016); *see also* J.A. 613–44 (Preliminary Decision Memorandum).

In June 2017, Commerce issued the final results of its administrative review.[7] In the final results, Commerce explained that Qixin had failed to provide evidence of an entry of subject merchandise during the period of review and, without "conclusive evidence" of such an entry, Qixin was not entitled to a separate rate. J.A. 762. As for Qixin's alternative argument—that if Commerce found there had been no entry of merchandise in the period of review, Commerce should have rescinded the review—Commerce simply "determined not to rescind the review" without further explanation. J.A. 762.

Qixin challenged the final results before the CIT, and Commerce requested a remand, agreeing that Qixin "had no opportunity to respond to Commerce's denial of its separate rate application and, likewise, Commerce lacked the opportunity to respond to the arguments Qixin may have made, had it had the opportunity." *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292, 1324–25 (Ct. Int'l Trade 2019) (citing Def.'s Response in Opposition to Plaintiff's Motion for Judgment on the Agency Rec. at 44–45 (J.A. 834–35)). The CIT granted Commerce's

---

[7]   Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014–2015, 82 Fed. Reg. 29,033 (June 27, 2017); *see also* J.A. 672–764 (Issues and Decision Memorandum). Commerce amended the final results, but the amended results did not change with respect to Qixin. Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2014–2015, 82 Fed. Reg. 40,560 (Aug. 25, 2017).

remand motion, ordering Commerce to reconsider its decision regarding Qixin's separate rate application.  *Id.* at 1325.

On remand, Commerce reopened the record and issued a third supplemental questionnaire to Qixin requesting, among other information, explanation and documentation regarding the sale Qixin had put forward as a sale of subject merchandise.  Qixin responded:

> Ningbo Qixin has been unable to obtain the information requested by the Department of Commerce and thus is supplying this letter in lieu of a substantive response.  Ningbo Qixin notes that all of the information . . . is in the possession of the United States government and official copies of all of these documents can be readily obtained from [U.S. Customs and Border Protection ("Customs")].

J.A. 901.

In June 2019, Commerce issued draft remand results reaffirming the denial of Qixin's separate rate application in the pre-remand final results, giving Qixin an opportunity to respond.  Commerce explained that "because Qixin had failed to provide conclusive evidence it had a sale or shipment of subject merchandise . . . , Qixin had not satisfied the requirements for obtaining a separate rate." J.A. 925.  Commerce noted that the burden rested on Qixin to show it was entitled to a separate rate, and that Qixin had failed to provide documentation of any entry of subject merchandise "[d]espite [the] repeated opportunities" provided by Commerce to do so.  J.A. 926.

Qixin submitted no comments on the draft remand results.  Accordingly, in July 2019, Commerce issued the final remand results, which reaffirmed the determination that Qixin had failed to demonstrate it had an entry of

subject merchandise in the period of review and, therefore, that Qixin was not entitled to a separate rate.

Thereafter, when the final remand results were before the CIT, Qixin moved for leave to file new information out of time. Qixin no longer contested that the previously identified sale was not a sale of subject merchandise. For the first time, Qixin identified five additional entries that Qixin claimed were of subject merchandise during the review period. Qixin apparently sought to provide this information to the CIT so that the information could be considered by Commerce in the event of a further remand.

In October 2019, the CIT denied Qixin's motion to file new information. The CIT explained that Qixin was required to submit this information to Commerce in the first instance, and, if Qixin needed an extension of time, it had to submit such request first to Commerce. The CIT could not, in the absence of such request, "consider evidence that Commerce itself never considered." *Canadian Solar Int'l Ltd. v. United States,* 399 F. Supp. 3d 1379, 1383 (Ct. Int'l Trade 2019).

In a separate decision, the CIT sustained Commerce's denial of a separate rate for Qixin. The CIT noted that Commerce had "reopened the record to provide Qixin an opportunity to demonstrate that any entry it may have made during the review period qualified as a sale of subject merchandise." *Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326, 1335 (Ct. Int'l Trade 2019) (internal quotation marks and citation omitted). Despite having the "burden to populate the record with all relevant information[,] Qixin failed to provide Commerce with the information it requested." *Id.* (citation omitted). Furthermore, Qixin had not "challenge[d] Commerce's redetermination on this matter" by filing comments on the draft remand results. *Id.*

Following several additional remands to Commerce and CIT decisions unrelated to Qixin, the CIT entered a final judgment denying Qixin a separate rate. *See Canadian Solar Int'l Ltd. v. United States*, 548 F. Supp. 3d 1373 (Ct. Int'l Trade 2021). Qixin appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

I

On appeal, Qixin first argues that the CIT should have granted Qixin's motion for leave to file new factual information out of time because Qixin had good cause for not presenting the information before Commerce's deadlines. Qixin had the burden to create the record during the administrative review and had no fewer than four opportunities—the original separate rate application and the three supplemental questionnaires—to provide complete documentation establishing entries of subject merchandise during the period of review. Normally, supplementation of the record is not permitted, because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *see also Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009). Accordingly, the CIT did not abuse its discretion in denying Qixin's motion to file new factual material out of time, as Qixin now apparently admits.[8]    *See Dongtai Peak Honey*, 777 F.3d at 1353

---

[8]    Qixin admits that "[Commerce] did provide an opportunity to submit information necessary to respond fully to [Commerce's] supplemental questionnaire[,] . . . that [Qixin] perhaps could have and should have requested an extension of time to submit its response to [Commerce's] remand supplemental questionnaire[, and] . . . that the

("Commerce's rejection of untimely-filed factual information does not violate a respondent's due process rights when the respondent had notice of the deadline and an opportunity to reply."); 19 C.F.R. § 351.302(d) (providing that Commerce will not consider untimely filed materials). Nonetheless, Qixin asks us as a matter of equity to allow the filing. We have no such authority.

## II

Qixin alternatively argues that Commerce should have rescinded the administrative review for Qixin rather than assigning Qixin the PRC-wide rate, relying on our decision in *Allegheny Ludlum* in which we explained that "where there are no entries . . . during a period of review there is no subject merchandise and thus nothing to review and no basis for revising cash deposit rates—so Commerce need not (indeed, cannot) conduct a review." 346 F.3d at 1372.

The government contends that Qixin's argument was forfeited because it was not raised before Commerce or the CIT, except in Qixin's pre-remand case brief. We need not decide whether the issue was properly raised below because we conclude that Qixin's argument lacks merit in any case.

The applicable regulation states that Commerce "*may* rescind an administrative review . . . if [it] concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise, as the case may be." 19 C.F.R. § 351.213(d)(3) (emphasis added). According to the government, "[t]he regulation's use of the permissive term 'may' means that Commerce is not

---

CIT and this Court generally will not consider matters outside the administrative record unless the omission prevents effective judicial review." Appellant's Br. 26 (citing *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379–80).

required to rescind a review in such circumstances and has discretion in making its determination." Gov't's Br. 32 (citation omitted).

However, the government was unable to identify any circumstances in which a review could continue in the absence of any entries of subject merchandise in the review period, and its effort to dismiss *Allegheny Ludlum* as inapplicable to NME cases is unconvincing. We doubt that continuing a review where it was conclusively established that there were no entries during the period of review could ever be appropriate.

But that is not the situation here. Despite some language in Commerce's original (pre-remand) final results that suggested Commerce may have affirmatively concluded Qixin had no entries, *see* J.A. 762 ("[Commerce] finds that Ningbo Qixin did not have a suspended entry of subject merchandise during the [review period]."), read in context, Commerce merely found that Qixin had not met its burden to establish entries. The final remand results clearly state that Commerce concluded only that it "determine[d] that, because Qixin ha[d] failed to provide conclusive evidence that it had a sale or shipment of subject merchandise, Qixin has not satisfied the requirements for obtaining a separate rate." J.A. 962; *see also* J.A. 963 ("[B]ecause Qixin has failed to demonstrate that it had a sale or entry of subject merchandise during the [review period], Commerce continues to find for purposes of this remand redetermination that Qixin is not eligible for a separate rate.").

Neither the regulation nor *Allegheny Ludlum* requires rescission of an administrative review where the exporter has failed to establish the absence of entries, and indeed, Qixin continues to argue that it did have entries. In *Allegheny Ludlum*, two parties had claimed they had not exported any subject merchandise to the United States

during the period of review, and Commerce affirmatively verified those claims, including by "review[ing] Customs' databases and [finding] that they showed no entries . . . during the period of review." 346 F.3d at 1370. The regulation provides for rescission if Commerce "concludes" there are no entries of subject merchandise in the period of review. § 351.213(d)(3). Here, Commerce in its final remand decision never "concluded" that Qixin had no entries in the period of review. In fact, Qixin has never even maintained that it had no entries. In its motion for leave to file new factual material out of time, Qixin pointed to additional entries it claimed were of subject merchandise during the period of review. And at argument, the government suggested that its records indicate Qixin did in fact have entries of subject merchandise during the review period. It is not inconsistent for Commerce to find that Qixin failed to establish there were no entries (necessary for rescission), and also to conclude that Qixin failed to establish there were entries (necessary for a separate rate). Qixin simply failed to resolve an ambiguity necessary for it to secure relief.

**AFFIRMED**